# IN THE COURT OF APPEALS OF IOWA

_____

No. 25-1586
Filed July 22, 2026

_____

**Steven Nelson,**
Petitioner–Appellant,

v.

**Florence O. Nelson Revocable Living Trust, Gary J. Olson, and
Florence O. Nelson,**
Respondents–Appellees.

_____

Appeal from the Iowa District Court for Winnebago County,
The Honorable Gregg R. Rosenbladt, Judge.

_____

**AFFIRMED AS MODIFIED**

_____

Brian D. Miller of Miller & Miller, P.C., Hampton, attorney for appellant.

Shaun Thompson of Newman Thompson & Gray PC, Forest City, attorney
for appellee Gary J. Olson.

David J. Siegrist of Siegrist, Jones, Lipps & Bakke, Britt, attorney for
appellee Lori J. Brekken, Trustee of the Florence O. Nelson Revocable
Trust.

_____

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

Brothers Steven and Gary Nelson each owned an undivided one-half interest in farm property worth over five million dollars. After partition-in-kind proceedings, the district court divided the property and ordered Gary to pay an owelty to Steven. Steven appeals, bringing both procedural and substantive claims. After careful review, we find Steven waived his procedural claim. We also affirm the district court on all substantive issues—except Steven's challenge involving pond repairs. The cost of that improvement should be credited to Steven. Thus, we affirm the decree as modified.

## I.     Facts and Prior Proceedings

Steven and Gary are third-generation farmers. Their grandfather bought the family's first farm in the late 1930s. As time went on, their father Leonard acquired more farmland. Leonard owned that land with his wife Florence; they lived on the "Home Farm" with their three children.[1]

The property subject to this partition action consists of five parcels that make up three farms: the Home Farm, the Thompson Farm, and the Knutson Farm. The Home Farm consists of a house on seven acres, another one and one-half acres with outbuildings, a bin site, and 225 acres of tillable farmland. The Thompson Farm includes 80 acres of tillable farmland, 37.42 acres enrolled in the federal Conservation Reserve Program (CRP), 19.5 acres of non-tillable river bottom land, a 3.57-acre pond, and a barn moved onto the farm by Steven. The Knutson Farm is approximately 147 acres of tillable farmland.

---

[1] Steven and Gary have a sister, Lori Brekken, who is not a party in this case.

Both boys remember growing up on the Home Farm and pitching in to help their father and grandfather. In the late 1960s and early 1970s, Steven and Leonard farmed together. But when Gary came home from college, they "went to a three-way situation." When Gary moved back to the Home Farm, he had two young children. After ten years, Gary's family moved to a house about a mile away. At the time of the hearing, Gary was in the process of retiring. His son recently moved back to take over Gary's farming operations. Gary testified that if the court awarded the home acreage to him, he planned to sell it to his son. As for Steven, since the late 1970s, he lived on an acreage just outside of the Thompson Farm, near the pond. He raised his family there. But before the hearing, Steven had moved to Clear Lake.

In 2009, Leonard died. Upon his death, he transferred his one-half interest in the five parcels to Florence for life, then to Gary and Steven as tenants in common.[2] After their father's death, Gary and Steven kept farming together until 2018, when animosity prevented them from working together.

In 2019, Florence created the Florence O. Nelson Revocable Trust U/A. She conveyed her one-half interest in the five parcels to herself as trustee. Later, her daughter Lori took over as trustee. The trust agreement provided that upon Florence's death, the trustee shall distribute the undivided one-half interest in the five parcels to Steven and Gary. That distribution was conditioned on each brother paying $150,000 to the trustee.

Three years later, Steven petitioned to divide those parcels by a partition in kind under Iowa Code chapter 651 (2022). He named his brother, his mother, and the Florence O. Nelson Revocable Trust as defendants. At

[2] They also owned property not included in this partition action. Leonard transferred three parcels to Florence for life, then to their daughter.

that time, Gary and Steven each owned an undivided one-quarter remainder interest in the partition property subject to Florence's life estate. The trust owned the other half of the property.

In an initial decree filed in October 2023, the district court determined that the parcels at issue were "heirs property" as defined in Iowa Code section 651.1(5) .[3] The court also appointed a referee under section 651.28 to obtain an appraisal of the property. The referee, Michael Moon, hired Fred Greder to complete the appraisals. Using Greder's appraisals, Moon filed a final report valuing the partition property at $5,608,500. Broken down, the referee valued the Thomson farm at $1,129,500; the Knutson Farm at $1,273,000; and the Home Farm at $3,206,000.

Meanwhile, in February 2025, Florence died. After her death, Gary and Steven each paid the trustee $150,000, leaving the brothers as the sole owners of the partition property. They were tenants in common and each owned an undivided one-half interest in the five parcels.

---

[3] Iowa Code § 651.1(5) states:

"Heirs property" means real property held in tenancy in common that satisfies all of the following requirements as of the date of the filing of a partition action:

a. There is not a recorded agreement that binds all of the cotenants that governs the partition of the property.

b. One or more of the cotenants acquired title from a living or deceased relative.

c. Any of the following apply:

(1) Twenty percent or more of the interests are held by cotenants who are relatives.

(2) Twenty percent or more of the interests are held by an individual who acquired title from a living or deceased relative.

(3) Twenty percent or more of the cotenants are relatives.

The partition action was heard in July 2025. Before the hearing, Steven moved to substitute the trust or the three siblings in the place of their mother as a defendant. Steven renewed his request at the hearing, citing the equitable division of court costs. The court later denied that motion.

At the hearing, the brothers urged competing in-kind partitions. Gary proposed splitting the Home Farm's tillable acres in half, with Gary receiving the east 112.5 acres along with the house, bin site, and Knutson Farm, and Steven receiving the west 112.5 acres and the Thompson Farm. Steven agreed to the division of the Home Farm but asked the court to assign the Knutson Farm and the pond to him and the Thompson Farm to Gary.

After the hearing, the district court issued its partition ruling, relying on the values in Greder's appraisals. It split the Home Farm's tillable acres between the brothers. The east half went to Gary, along with abutting acreage including the house and the bin site. The court also assigned the Thompson Farm to Gary. The west half of the tillable acres went to Steven, along with the Knutson Farm. In total, Gary received property worth $2,905,000, and Steven received property worth $2,703,000. The court ordered Gary to make an "equalization payment" of $101,000. Finally, the court denied Steven's request for credit to cover repairs to the pond and remodeling of the barn. It found "that the added value of these improvements in the present day is too speculative to factor in."

Steven moved to enlarge and amend the order, seeking different values for the east and west halves of the Home Farm's tillable acres. He also sought credit for the pond repair and the barn addition and wanted to be awarded the pond on the Thompson Farm. Lastly, he alleged the court failed to follow proper procedure for partition actions. The district court denied the motion but delayed transfer of title until Gary made his owelty payment.

Steven appeals.[4]

## II.    Scope and Standard of Review

Proceedings to partition property are equitable, so we review them de novo. *Muhr v. Willenborg*, 6 N.W.3d 752, 757 (Iowa Ct. App. 2024). We are not bound by the district court's findings of fact, but we give them weight, especially on credibility issues. *Id.*

## III.    Analysis

Steven claims that the district court made five errors: (1) bypassing procedures required under Iowa Code sections 651.28 and 651.29, (2) equally valuing the two halves of the Home Farm's tillable land, (3) failing to give Steven credit for the barn improvement on the Thompson Farm, (4) failing to give him credit for repairing the pond, (5) and not substituting parties for Florence after she passed away. We address each claim in turn.

### A. Partition Procedures

We start with an overview of chapter 651's subchapter III, which outlines procedures when a partition involves heirs property. When a cotenant requests a partition in kind, the court enters an initial decree and appoints a referee to obtain an appraisal of the land. Iowa Code § 651.28(1). Within ten days after the referee files the appraisal, the court sends notice to each party informing them of the appraisal and giving them a chance to file objections within thirty days of the notice. *Id.* § 651.28(2). Then, regardless of whether a party objects, the court conducts a hearing to determine the property's fair market value. *Id.* § 651.28(3).

---

[4] The trust takes no position and waived its right to file a brief.

After the hearing, the court files an order determining the fair market value and provides notice to all parties. *Id.* § 651.28(4). Then, a cotenant has the chance to request partition by sale, kicking off a new series of procedures. *Id.* § 651.29(1). If the conflict is not resolved through a buy-out, the court must partition the property in kind, unless doing so would result in "great prejudice to the cotenants as a group." *Id.* §§ 651.30, .31 (listing factors for the court to consider in determining great prejudice).[5] This subchapter reflects Iowa's preference to protect heirs property against partitions by judicial sale. *Muhr*, 6 N.W.3d at 758.

Steven contends that the district court "sua sponte entirely bypassed the provisions of Iowa Code section 651.29 when it moved directly to the partition in kind." Drilling down, Steven alleges that the court erred in combining the valuation hearing with the partition-in-kind trial. By moving directly to a partition in kind, Steven states the district court deprived the brothers "of the statutory possibility of being able to purchase some of the heirs property from one another, in the event either chose to be bought out."

Gary pushes back. He argues that Steven did not preserve error on the issue of the cotenant buyout provision in section 651.29. And Gary is not alone. In his appellant's brief, Steven also doubts whether "this issue has been properly preserved for this appeal." Steven then contends the error did not become apparent until "the district court combined the valuations/objections hearing with a partition in kind ruling." Still, Steven admits that "perhaps" he should have raised this claim more clearly in his motion under Iowa Rule of Civil Procedure 1.904(2). True, Steven did discuss procedural issues under section 651.29 in that motion. But he also

---

[5] From there, the court is directed back to subchapter II and partitions in kind or by sale follow normal procedures. *Id.* § 651.32.

acknowledged that he did not anticipate requesting a buyout of the land assigned to him (though he claimed not to know whether Gary would).

On this record, we find that Steven waived his objection to the court's procedural shortcut. *See Sievers v. Iowa Mut. Ins. Co.*, 581 N.W.2d 633, 638 (Iowa 1998) ("To preserve error for our review, a party must specify the subject and grounds of the objection."). As Gary emphasizes, they "all understood that the purpose of the trial was for the court to make a final partition of the property in kind." And Gary made a specific request for the partition in kind at the hearing. So it was evident from the record that neither party intended to request a cotenant buyout. *Cf. Noll v. Flewelling*, No. 24-0475, 2025 WL 1177507, at *1 (Iowa Ct. App. Apr. 23, 2025) (noting that siblings stipulated that no party would request a cotenant buyout under section 651.29). We decline to reach the merits of this procedural claim.

### B. Valuing both halves of the Home Farm's tillable acres

The district court accepted Greder's $2,860,000 valuation of the Home Farm's tillable acres. Steven does not contest that figure. Instead, he disputes the district court's decision to assign equal value to the east and west halves. Steven points to Greder's appraisal, which explained that not all of the Home Farm's 225 tillable acres fall in the same class, affecting the land values. Greder found that the east 160 acres were primarily Class I land, whereas the west 80 acres were primarily Class III land, worth fifty-five to sixty-five percent less than Class I land. Steven requests we value the west half of the Home Farm tillable acres at sixty percent of the east half. Alternatively, he requests we remand for further proceedings to obtain a supplemental appraisal valuing each half of the land.

Gary counters that Steven had ample opportunity to request a bifurcated valuation of the split property. And in any event, Greder's

proposal references thirds of the property, not halves. Plus, although the eastern half had better soil, it had fewer acres available for cultivation, given the bin site and buildings.

True, Steven received notice of the hearing on valuation. But the proposal to bisect the Home Farm arose at the hearing, so neither party was prepared with a valuation of halved property. That said, we recognize the district court had to balance family dynamics and was faced with nearing leasing deadlines, so we find the court acted equitably in weighing the parties' preferences and splitting the Home Farm's tillable acres. Dividing the appraised value of that parcel in equal halves was "well within the range of the evidence and should not be disturbed on appeal." *Cf. In re Marriage of Wiedemann*, 402 N.W.2d 744, 748 (Iowa 1987) (upholding valuation of business in dissolution case).

## C. Credit for barn and pond improvements

Before his recent move to Clear Lake, Steven lived on an acreage bordering the Thompson Farm. There's a pond—built in the early 1970s—on the Thompson Farm about seventy feet from his former house. Steven agreed at the hearing that the pond benefited him more than Gary. Steven's family used it regularly for fishing and swimming, while Gary had not used the pond for nearly thirty years.

In 2023, Steven hired a company to fix drainage issues with the pond. The repairs cost $9,729.50. Steven didn't inform his brother or the trust before he made that investment. After paying for the repairs, Steven mailed a letter to the cotenants seeking contributions. In the letter, he requested the "others to pay their legal obligations based on ownership interests for the pond repair work." He never heard back. In his proposed partition, he requested credit for the pond repairs.

Steven also points to a second improvement project. In the early 2000s with his parents' blessing, Steven moved a barn onto the Thompson Farm. He testified that he spent $30,000 to $40,000 moving the structure and retrofitting it as a garage. The appraiser valued the barn at $15,000. In his partition action, he requested to be credited for that $15,000 value.

Lumping together the pond and the barn, the court found that "the added value of these improvements in the present day is too speculative to factor in," so it "use[d] the appraisals at present value to make the division."

We begin by reviewing Iowa law on contributions in partition actions. In *Indra v. Wiggins*, 28 N.W.2d 485, 489–96 (Iowa 1947), the court reviewed the principles governing improvements and repairs. *Indra* noted that in direct actions, "one cotenant cannot voluntarily improve the common property, and then . . . compel another cotenant to contribute [their] proportionate share thereof." 28 N.W.2d at 490. Beyond improvements, "this cannot be done with respect to even necessary repairs, unless there has been a request and a refusal of the cotenant to participate." *Id*. But the court found that those common law principles don't apply in a partition action tried in equity. *Id*. at 491. Instead, in a partition action,

> a court of equity was required to take improvements into account when decreeing partition, and to award the cotenant in possession, who had necessarily and in good faith improved the common property and enhanced its value at his own cost, such equitable compensation as would leave only the value of the estate, without the improvements to be divided among the tenants in common. This relief was granted in actions in partition in keeping with the familiar principle of equity jurisprudence, which requires that one who seeks equity must do equity. The rule in this behalf has been adopted and applied, with but rare exceptions, in every jurisdiction where the action for partition is considered as one calling for equitable interposition and relief.

*Id*. (quoting 1 A.L.R. 1189).

Stated differently, "when improvements built by a cotenant enhance the value of the common estate and cotenants are not injured in any way, or hindered from having partition, they should not be permitted to take advantage of the improvements, to which they contributed nothing." *Grout v. Sickels*, 985 N.W.2d 144, 150–51 (Iowa 2023). To make an improvement in good faith means "they must be made honestly for the purpose of improving the property and not to embarrass the cotenants, encumber their estate or hinder partition." *Mahon v. Mahon*, 121 N.W.2d 103, 106 (Iowa 1963).

In deciding how to credit Steven for his improvements, we assess their added value at the time of the partition. *See Indra*, 23 N.W.2d at 489. "The original cost of the improvements is not a controlling factor . . . ." *Mahon*, 121 N.W.2d at 106. When the partition is in kind, the remedy "is to include the improvements in that portion of the common estate awarded by decree to such cotenant." *Id*. For partitions by sale, the remedy is generally "to order the property sold as a whole including the existing improvements and to award to the owner of the improvements, out of the sale price, their fair contribution thereto." *Nelson v. Pratt*, 230 N.W.324, 325 (Iowa 1930).

This case law applies to both improvements and repairs. *See Indra*, 28 N.W.2d at 490; *Van Veen v. Van Veen*, 283 N.W.718, 724 (Iowa 1931) (crediting party for repairs in partition action). So, with these principles in mind, we address Steven's arguments on the barn and pond.

*Barn*. Steven contends the district court failed to give him credit for moving and renovating the barn. Under *Indra*, the district court must award the cotenant in possession who made the improvements "equitable compensation as would leave only the value of the estate, without the improvements[,] to be divided among the tenants in common." 28 N.W.2d at 491. Steven argues the district court failed to do this. But we think otherwise.

Under the rule outlined in *Indra*, the party who made the improvements is credited because they received the land with the improvements. *Id*. It would be inequitable to calculate an owelty where the party who made the improvements receives a smaller payment because of their expenses to improve the land.

Unlike *Indra*, Steven did not receive the property with the barn. Instead, Gary received the improved property. This means that the value of property awarded to Gary in the partition is higher than it would have been without the improvements, which increases his owelty payment to Steven. Because Gary must pay Steven a higher owelty due to that increase in value, Steven received credit for his improvements. The district court acted equitably in its division regarding the barn.

*Pond*. Next, Steven requests credit for the cost of repairing the pond. Gary opposes that request, contending there was no evidence the repairs were necessary and arguing that Steven did not act in good faith because he did not inform the cotenants of the drainage issues in advance. True, in a direct legal action Gary would not likely bear responsibility for the repairs. *See id*. at 490. But in a partition action tried in equity, he cannot receive a windfall from Steven's repairs. As the district court wrote, Gary is free to sell the pond to neighbors. And in doing so, Gary would benefit from Steven's efforts to fix the drainage issues. As for evidence, Steven presented the drainage company's invoice—proving the legitimacy of the repairs. So Steven should be credited $4,864.75, Gary's share of the pond repair costs. Thus, we modify the decree to increase Gary's owelty payment to Steven from $101,000 to $105,864.75.

**D. Party substitution**

Lastly, Steven argues the district court should have substituted a party for Florence after her death. At the hearing, he advocated for the three siblings to be substituted in their mother's place. The district court found substitution was unnecessary because at the time of trial, Steven and Gary had "the only remaining interests in the subject property."

We agree. Iowa Rule of Civil Procedure 1.221 permits substitution so long as the district court orders it within two years after the original party's death. But "[i]f the decedent's right survives entirely to those already parties, the action shall continue among the surviving parties without substitution." Iowa R. Civ. P. 1.221. Steven and Gary had remainder interests in Florence's life estate. When she died, their interests vested. Her ownership interest in the partition property transferred to Steven and Gary, who were already parties. So, under rule 1.221, substitution was not required.

Steven focuses his concern on equitably dividing court costs. But court costs are measured by ownership interests. After owelty payments are made and the partition in kind is complete, the "court shall file a decree that includes . . . [a] judgment against each property owner for each property owner's apportioned costs." Iowa Code §651.16(5)(c). Here, the property was partitioned when only Steven and Gary had ownership interests. Thus, court costs will be divided between them in accordance with their undivided one-half ownership interests.

**AFFIRMED AS MODIFIED.**